**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**VONDA K. KENNEDY,**

      **Plaintiff,**

**vs.**                      **Case No. 5:08cv347-SPM/WCS**

**MICHAEL J. ASTRUE,
Commissioner of Social Security,**

      **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a social security case referred to me for a report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D. Loc. R. 72.2(D). It is recommended that the decision of the Commissioner be affirmed.

**Procedural status of the case**

Plaintiff, Vonda K. Kennedy, applied for disability insurance benefits and supplemental security income benefits. Plaintiff was 40 years old at the time of the administrative hearing (on March 28, 2007), has a 12th grade equivalency education, and has past relevant work as a cashier, cook, housekeeper, sewing factory worker,

and a lead kitchen supervisor. Plaintiff alleges disability due to severe headaches. The

Administrative Law Judge found that Plaintiff had the residual functional capacity to do a

limited range of sedentary work, and based upon testimony of a vocational expert,

found several jobs in the national economy which Plaintiff could do. He concluded that

Plaintiff was not disabled.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by

substantial evidence in the record and premised upon correct legal principles. Chester

v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). "Substantial evidence is more than a

scintilla, but less than a preponderance. It is such relevant evidence as a reasonable

person would accept as adequate to support a conclusion." Bloodsworth v. Heckler,

703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d

1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if

supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir.

2002). "If the Commissioner's decision is supported by substantial evidence we must

affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232,

1240, n. 8 (11th Cir. 2004) (citations omitted). The court must give "substantial

deference to the Commissioner's decision." Dyer v. Barnhart, 395 F.3d 1206, 1211

(11th Cir. 2005). "A 'substantial evidence' standard, however, does not permit a court to

uphold the Secretary's decision by referring only to those parts of the record which

support the ALJ. A reviewing court must view the entire record and take account of

evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber

v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed

all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.' " Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps. 20 C.F.R. § 404.1520(a)-(f):

1.   Is the individual currently engaged in substantial gainful activity?

2.   Does the individual have any severe impairments?

3.   Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.   Does the individual have any impairments which prevent past relevant work?

5.   Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits. A positive finding at step three results in approval of the application for benefits. At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work. If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy. Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986). If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner. Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Whether the ALJ properly evaluated Plaintiff's testimony concerning the limitations of her headaches**

Plaintiff contends that the ALJ erred in his evaluation of her testimony concerning the severity of her headaches.

### Evidence at the hearing

Plaintiff testified that in September, 2004, a "storm came and they told me it was the [barometric] pressure of that storm" that caused my headaches. R. 312. Since then, she said, she has had headaches every day and they "never went away." *Id.*

Plaintiff said that her neurologist said her MRI suggested she had multiple sclerosis and "in two years they'll most definitely tell me I have MS." *Id.* She said that he told her that the MRI of the right side of her brain was "definitely different from the left side." *Id.* She said she had pain on one side. *Id.*

Plaintiff said that the pain was with her "[e]very day, seven days a week, 24 hours." R. 313. She said the pain caused her nausea daily and that light "really bothers me." *Id.* She said that noise bothers her and her eyes "stay blurry." R. 314. Plaintiff said that when her blood sugar is elevated, she feels nausea, cannot focus, and said that "my head hurts in the top of my head." R. 315. She explained that her diabetic headache was located in the top of her head. *Id.* She said that every day she experienced headache pain of 8 on a scale of 10, and during one week a month, "it's above ten." R. 321.

Plaintiff's weight at the hearing was 321 pounds. R. 319. (She is five feet four inches tall. R. 197.) She said she gained all of "this weight" taking Prednisone. R. 332. She said that she got out of breath and had chest pains trying to sweep her porch. R. 321. She said that all of her blood relatives have diabetes. R. 332.

A supplemental hearing was held on June 5, 2007. R. 335. Plaintiff was then 41 years old. R. 342. An MRI dated February 25, 2005, was received into evidence. R. 338.

Plaintiff said that pain from her headaches was on the right top of her head and her temple. R. 343. She said that the nausea was worse when the pain was worse. *Id.* Lying down does not lessen the pain of the headache. R. 344-345. Since the last hearing she had been to the emergency room once for a headache. R. 346. Plaintiff said that her hypertensive headaches hurt in the back, while her diabetic headaches hurt in the front. R. 346.

The administrative law judge called a vocational expert as a witness.  R. 349.  He

asked the expert to assume a hypothetical person with a GED, between the ages of 39

and 41, literate, with some work experience, and with physical impairments, including:

> some diabetes, some hypertension, some problems with the heart, some
> tenderness and neuropathy that's been called by several different names,
> some tingling in the extremities and too much weight for the frame . . . .

R. 350.  He suggested a person who could do restricted range of sedentary work,[1] can

stand and walk for 2 hours, an average of 2 hours in an 8 hour day, and can sit for 6

hours in an 8 hour day, but cannot climb ropes, ladders, or scaffolds, and must avoid

dangerous work or work involving constant overhead reach.  *Id.*  The vocational expert

said that such a person could perform work as a shipping and receiving clerk, sedentary

dispatcher, quotation information clerk, and sedentary cashier.  R. 352.  The expert said

that if Plaintiff had daily severe headaches and severe nausea so as to "impede

concentration and pace, that would have a definite impact as far as employability."  R.

354.

### The legal standard for the evaluation of pain testimony

Pain and other symptoms reasonably attributed to a medically determinable

impairment are relevant evidence for determining residual functional capacity.  Social

---

[1] The physical exertion requirements for sedentary work are:

> Sedentary work involves lifting no more than 10 pounds at a time and
> occasionally lifting or carrying articles like docket files, ledgers, and small
> tools.  Although a sedentary job is defined as one which involves sitting, a
> certain amount of walking and standing is often necessary in carrying out
> job duties.  Jobs are sedentary if walking and standing are required
> occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a).

Security Ruling 96-8p, p. 4.  Pain and other symptoms may affect either exertional or

non-exertional capacity, or both.  *Id.*, p. 6.

> In order to establish a disability based on testimony of pain and other
> symptoms, the claimant must satisfy two parts of a three-part test
> showing:  (1) evidence of an underlying medical condition; and (2) either
> (a) objective medical evidence confirming the severity of the alleged pain;
> or (b) that the objectively determined medical condition can reasonably be
> expected to give rise to the claimed pain.  *See Holt v. Sullivan*, 921 F.2d
> 1221, 1223 (11th Cir. 1991).  If the ALJ discredits subjective testimony, he
> must articulate explicit and adequate reasons for doing so.  *See Hale v.
> Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).

Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).

> A claimant's subjective testimony supported by medical evidence that
> satisfies the pain standards is itself sufficient to support a finding of
> disability.  Indeed, in certain situations, pain alone can be disabling, even
> when its existence is unsupported by objective evidence.

Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995) (citations omitted).

"[W]here proof of a disability is based upon subjective evidence and a credibility

determination is, therefore, a critical factor in the Secretary's decision, the ALJ must

either explicitly discredit such testimony or the implication must be so clear as to

amount to a specific credibility finding."  Foote v. Chater, 67 F.3d at 1562, *quoting*,

Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983).  The reasons articulated for

disregarding the claimant's subjective pain testimony, therefore, must be based upon

substantial evidence.  Jones v. Department of Health and Human Services, 941 F.2d

1529, 1532 (11th Cir. 1991).

### The medical evidence

On September 12, 2004, Plaintiff was admitted to the hospital through the

emergency room with a diagnosis of chest pain, malignant hypertension, diabetes

mellitus, and congestive heart failure.  R. 169.  Her blood pressure was 217 over 130,

and her glucose level was elevated at 225.  R. 170.  She was discharged with her chest

pain resolved, congestive heart failure ruled out, and hypertension and diabetes

controlled.  R. 169.  A note was entered that there was some scepticism that Plaintiff

was taking her medications at home because her blood pressure was not controlled

except in the hospital.  *Id.*

Plaintiff returned to the emergency room on December 29, 2004, with complaints

of chest pain.  R. 173.  She had not been taking blood pressure medication since

November because she ran out, and no longer had Medicaid.  *Id.*  It was noted that

though she said she could not afford medications, she did not come by the office for

free samples.  *Id.*  Her blood pressure was 205 over 122.  *Id.*  Her blood sugar was 235.

R. 171.  Plaintiff said she had a headache, which the physician, Samuel Ward, thought

was due to blood pressure and the nitroglycerin drip used to control her blood pressure.

R. 173.  Lortab was prescribed for the headache with some relief.  R. 171.  She had

nausea which Plaintiff said was because her gallbladder had been removed.  *Id.*

Among the assessments was noncompliance with medications and medical care and

followup.  R. 174.

On January 5, 2005, Plaintiff had a head CT scan.  R. 175.  No abnormality was

identified.  *Id.*

On February 25, 2005, Plaintiff had an MRI of her brain for her headaches.  R.

275.  Nonspecific findings that may relate to a demyelinating process were detected.  *Id.*

On March 7, 2005, Plaintiff presented to another hospital with a left sided

headache, mild paresthesia of the right hand, and chest pain.  R. 176, 178.  The focus

of the examination was the paresthesia.  R. 177.  A CT scan of the brain was normal.
R. 182.

On March 31, 2005, Plaintiff was seen in the office of Ikram U. Qureshi, M.D., by
Larry Rafey, Physician's Assistant.  R. 265.  Elevated blood sugar and blood pressure
and headaches were noted as problems.  *Id.*  A lengthy history of hypertension and
headaches was also noted.  *Id.*  It was said that prednisone had alleviated the
headaches, but the symptoms recurred when the medication was completed.  *Id.*  P.A.
Rafey said that Plaintiff continued to experience persistent blood sugar and blood
pressure elevations despite medication, was morbidly obese, and "admits to very poor
dietary habits."  *Id.*  On that day, during a review of systems, Plaintiff denied having a
headache, dizziness, or visual problems.  *Id.*  Plaintiff's weight was 345 pounds.  *Id.*
Her blood sugar was 433, and her blood pressure was 201 over 123.  R. 265.  *Id.*
Headache, rule out vasculitis, was among the assessments.  R. 264.  Dietary
restrictions and weight reduction were discussed.  *Id.*

On April 6, 2005, Dr. Qureshi saw Plaintiff.  R. 263.  Plaintiff had a complaint of
elevated blood pressure.  *Id.*  Dr. Qureshi said that previous and recent tests had ruled
out vasculitis.  *Id.*  Plaintiff had responded well to changes in medications.  *Id.*  She still
complained of headaches and nausea, although she did not complain of a headache
that day.  *Id.*  Dr. Qureshi told Plaintiff that her headaches were "likely because" she
was obese, and she was encouraged to join weight watchers.  *Id.*  Her blood sugar was
309, and her blood pressure was 158 over 93.  *Id.*  During a review of systems, Plaintiff
denied headache, visual impairment, or dizziness.  *Id.*  Dr. Qureshi diagnosed, *inter alia*,

headache, rule out vasculitis (even though that had been ruled out). R. 262. He noted

that Plaintiff had an appointment with Dr. Jacob on April 22, 2005. R. 263.

On April 21, 2005, Plaintiff was seen by E. Jacob, M.D., board certified in

neurology and psychiatry. R. 198. Dr. Jacob said that Plaintiff had a "long standing

history of nausea, headache, dizziness and blurred vision." *Id.* He said that symptoms

had been going on "for several months and are gradually getting worse." *Id.*

> The headache is felt over the frontal area and is associated with nausea,
> photophobia and aversion to sound. The patient also has a spinning
> sensation with a loss of balance and an inability to focus her eyes. The
> patient also complains of blurred vision without double vision.

R. 198. Plaintiff said that the blurred vision was mainly on the left side and had been

going on since September, 2004. *Id.* Dr. Jacob said that Plaintiff was morbidly obese.

*Id.* On examination, Dr. Jacob found that Plaintiff's acuity and field of vision were

normal. R. 199. He found distal sensory loss in the hands and feet bilaterally. *Id.* His

impression was "severe protracted headache with blurred vision and vertigo." *Id.* He

said that the MRI findings were "suggestive of MS." *Id.* Dr. Jacob thought that perhaps

due to Plaintiff's obesity, her symptoms were caused by pseudo tumor cerebri. R. 200.

He also thought that the T2 hyper intensity signals, though suggestive of MS, could be

due to "trans epindymal migration of CSF fluid." *Id.* A spinal tap was thought

necessary. *Id.*

On May 2, 2005, Dr. Jacob administered a test for carpal tunnel syndrome,

finding that Plaintiff had carpal tunnel syndrome bilaterally. R. 192. The EMG studies

were inconclusive due to Plaintiff's obesity. *Id.*

On May 4, 2005, Plaintiff was seen by P.A. Rafey.  R. 261.  Plaintiff complained of headaches and nausea.  *Id.*  Her blood pressure was elevated, 189 over 113.  *Id.* Her blood sugar was 175.  *Id.*  P.A. Rafey noted that Dr. Jacob had ordered a lumbar tap for spinal fluid.  *Id.*  Plaintiff was advised "again" to lose weight and she agreed to cut down on her portions and eat fewer meals.  *Id.*  During a review of systems, Plaintiff again denied having a headache, visual impairment, or dizziness, although "headache" was among the assessments.  *Id.*

On May 26, 2005, Plaintiff was seen by Dr. Jacob.  R. 191.   Dr. Jacob noted: "Patient was upset about this [advice to lose weight] and patient told me that there are so many fat people in the world, why do you want me to lose weight."  *Id.*  Dr. Jacob said that Plaintiff should lose weight because he thought that this could "prevent a lot of complications."  *Id.*  Dr. Jacob also recommended that she not take prednisone due to dangerous problems with osteoporosis, osteonecrosis of the femur, and diabetes.  *Id.* Plaintiff wanted to get her records so that she could apply for social security disability. *Id.*  He concluded:

> It seems that the patient's biggest problem seems to be morbid obesity.
> Unless she reduces her weight there will be more complications in the
> future.  Patient should get appropriate medical help to lose weight.

R. 191.

On June 7, 2005, Plaintiff was seen by Dr. Qureshi.  R. 259.  Plaintiff complained of onset of headache "in conjunction to elevated BP [blood pressure]."  *Id.*  Plaintiff said her blood pressure had been normal for a while, but she had run out of her medication four days earlier.  *Id.*  Dr. Qureshi said that Plaintiff was undergoing tests by Dr. Jacob to rule out multiple sclerosis.  *Id.*  On review of systems, Plaintiff denied headache,

visual impairment, or dizziness, but recurrent headaches was assessed. *Id.* Her blood

sugar level was 175, and her blood pressure was 214 over 134. *Id.* She weighed 350

pounds. *Id.*

On June 20, 2005, Plaintiff was seen by P.A. Rafey. R. 257. She complained of

continued headaches. *Id.* Rafey noted that the MRIs, spinal tap, and other tests

"showed no evidence of MS," and Lupus also had been ruled out. *Id.* In the "plan,"

P.A. Rafey wrote in part: "Dietary restrictions and weight reduction!!!" R. 256.

On July 28, 2005, P.A. Rafey again saw Plaintiff, who was again complaining of

headaches. R. 255. P.A. Rafey noted: "The [patient] returns following a final visit with

her neurologist, Dr. Jacobs, whose note to us indicates that the [patient's primary]

problem is elevated [blood sugar] and he insists that she control this better and

emphasizes weight reduction." R. 255. Rafey noted further that Plaintiff's blood sugar

appeared to be well-controlled "according to our tests during her visits," but Plaintiff

admitted to a "sweet tooth" "and implies that her BS [blood sugar] is not always in

control." *Id.* Plaintiff continued to complain of headaches, but none of the tests

indicated another etiology. *Id.* P.A. Rafey again recommended dietary restrictions,

weight reduction, restart blood pressure medications as directed (with emphasis), and

control blood sugar "according to consumption as discussed." R. 254.

On September 1, 2005, Plaintiff saw P.A. Rafey. R. 253. She complained of

elevated blood pressure, low blood sugar, asthma, and a cough. *Id.* Her blood

pressure was elevated (201 over 129) and she said she ran out of her medications the

week before. *Id.* On review of systems, Plaintiff denied having a headache, vision

problems, or dizziness. *Id.* She weighed in excess of 350 pounds. *Id.* The

assessment was headache, HCVD (poorly controlled), morbid obesity, and poor compliance. R. 252. She was to restart her medications, control her diet, and reduce her weight. *Id.*

On September 20, 2005, P.A. Rafey said that Plaintiff had daily headaches of unknown cause, lasting about 24 hours, with nausea and vomiting. R. 235. He said that Plaintiff is unable to work when suffering a headache. *Id.*

On November 2, 2005, Plaintiff returned "with BP [blood pressure] elevations" (182 over 103), she had again run out of her medications, and her headache had returned. R. 251. It was again noted that all of the testing had found no etiology for her headache. *Id.* This time, on review of systems, it was *not* noted that Plaintiff denied having a headache. *Id.* Plaintiff had lost significant weight, weighed 338 pounds, and her blood sugar (at 105) "appears to be well controlled at this time." *Id.* It was noted that Dr. Jacobs had "dismissed her from his practice," she had been referred to a rheumatologist, but failed to show for the appointment. *Id.* Visual impairment, photophobia, and dizziness were absent. *Id.*

On January 23, 2006, Plaintiff was seen by P.A. Rafey. R. 249. She had elevated blood sugar (228). *Id.* P.A. Rafey said that she had "undergone evaluation per Neurologist/[Ophthalmologist] who have concluded that her various disorders, including headaches, are secondary to poorly controlled diabetes." *Id.* Plaintiff admitted to poor medication compliance. *Id.* She weighed over 350 pounds. *Id.* Weight reduction and diet were again recommended. R. 250.

On April 24, 2006, P.A. Rafey saw Plaintiff. R. 247. She weighed over 350 pounds and her blood sugar was again elevated (228). *Id.* It was again recommended

that she watch her diet, lose weight, and take her medications. R. 248. Poor compliance was noted. *Id.*

On May 1, 2006, Plaintiff was found to still be poorly compliant with her diet and medications, and her blood sugar and blood pressure were poorly controlled. R. 245. Her blood sugar was 235, and she weighed in excess of 350 pounds. *Id.*

On September 6, 2006, P.A. Rafey saw Plaintiff. R. 243. Her blood pressure was significantly elevated (204 over 135). *Id.* She had lost significant weight on a diet, weighing 334 pounds. *Id.*

On September 15, 2006, Plaintiff saw Dr. Qureshi. R. 241. She complained of right jaw pain and swelling. *Id.* There was no specific mention of headaches. *Id.*

On October 5, 2006, Plaintiff had infection of her gums. R. 238. She was noted to continue with a poor diet and continued weight gain. *Id.* Her weight was up again to 342 pounds. *Id.* Her blood sugar was 184. *Id.*

On November 2, 2006, Plaintiff returned with elevated blood pressure, but had taken her medication about 30 minutes earlier. R. 236. Her blood sugar was 190. *Id.* Dr. Qureshi said that low salt and weight reducing diets were "reinforced." R. 237.

On December 18, 2006, Plaintiff saw P.A. Rafey with a complaint of a headache, and a long standing history of recurrent headaches was noted. R. 269. Rafey again mentioned that the neurologist (Dr. Jacob) thought that Plaintiff's constantly elevated blood sugar was probably a contributing factor to the headaches. *Id.* Her blood sugar was significantly elevated, at 402 that day. *Id.* Plaintiff continued to gain weight. *Id.* Plaintiff admitted to very poor dietary compliance. *Id.* The assessment was headache

with nausea.  R. 270.  However, during the review of systems, Plaintiff denied headache or visual impairment.  R. 269.

On January 4, 2007, Plaintiff saw P.A. Rafey for bilateral wrist pain, restless legs at night, and elevated blood pressure and blood sugar.  R. 267.  She had "been out of her medications and also notes continued heavy salt and sweet consumption."  *Id.*  Her blood sugar was 355, and her blood pressure was 186 over 128.  *Id.*  She denied a headache or visual impairment.  *Id.*  It was noted that a previous neurological examination "turned up [carpal tunnel syndrom] in both wrists."  *Id.*

On February 12, 2007, Dr. Qureshi saw Plaintiff.  R. 273.  Her blood pressure was elevated at 181 over 112.  *Id.*  Her blood sugar was elevated at 275.  *Id.*  On review of systems, Plaintiff denied having a headache or any visual impairment.  *Id.*  She complained of nausea, and said she had vomited twice since last week.  *Id.*  Poor compliance was again noted.  R. 274.

On March 15, 2007, P.A. Rafey saw Plaintiff.  R. 271.  She complained of gastric distress and elevated blood sugar.  *Id.*  Blood sugar of 367 was recorded with the notation "chocolate milkshake."  *Id.*  P.A. Rafey wrote that Plaintiff continued to "indulge in grossly poor dietary habits and her [blood sugar] continues to be subsequently elevated."  *Id.*  She had lost some weight, and her blood pressure had stabilized on medication.  *Id.*  Plaintiff denied having a headache or visual impairment.  *Id.*

On April 5, 2007, Plaintiff had elevated blood sugar (355).  R. 302.  Her diabetes by testing was poorly controlled.  *Id.*  She had lost 3 pounds since the last visit.  *Id.*

On April 24, 2007, Plaintiff was admitted to the emergency room with complaints of shortness of breath.  R. 280.  Her glucose level was 476.  R. 294.  By x-ray it was

determined that she had no active chest disease.  R. 296.  The diagnostic impression

was hyperglycemia and bronchitis.  R. 281.  She was told to take her medications as

prescribed.  *Id.*  Zithromax was prescribed.  *Id.*  On review of systems, Plaintiff denied

having a headache (although recurrent headaches was the assessment), visual

impairment or dizziness.  *Id.*

On May 10, 2007, Plaintiff was seen on followup for bronchitis.  R. 300.  Her

blood sugar continued to be elevated (279).  *Id.*  Plaintiff denied having headache or

visual impairment.  *Id.*

**The ALJ's decision**

The Administrative Law Judge found Plaintiff's testimony as to the frequency and

severity of her headaches and nausea not credible to the degree alleged because

unsupported by the medical evidence.  R. 21-22.  This determination is supported by

substantial evidence in the record.  The substantial evidence in this record reasonably

permits the conclusion that Plaintiff does not suffer daily headaches.  There are too

many notations in the medical records that on review of systems, Plaintiff did not

complain of a headache that day.

Further, even if Plaintiff suffers headaches and nausea to the degree alleged, the

ALJ further found that Plaintiff's hypertension responded to medical treatment.  R. 22.

He noted that Plaintiff did not take her blood pressure medication as prescribed.  *Id.*  A

long history of medical noncompliance with respect to her hypertension had been noted

in the records.  *Id.*  On December 18, 2006, however, Plaintiff's blood pressure was well

controlled and there was no report of medication noncompliance.  *Id.*

There was no evidence of a brain impairment causing the headaches. The ALJ noted that a CT scan of Plaintiff's head on January 5, 2005, was normal. *Id.* An MRI of the head on February 25, 2005, suggested a demyelinating process, but nothing definite. *Id.* Multiple sclerosis was ruled out.

The ALJ also noted a history of medical noncompliance with treatment for diabetes and that Plaintiff admitted several times to poor dietary compliance. *Id.* Physician's Assistant Rafey attributed Plaintiff's headaches to poor control of her blood sugar. The ALJ concluded:

> Based upon the objective medical evidence, it appears that the claimant's headache pain is directly related to poor control of her blood sugar. Presumably, her headaches would decrease significantly through compliance with prescribed therapy to control her diabetes.

R. 23.

All of these findings are supported by the medical evidence discussed above. The treating medical sources found no cause of the headaches other than failure to control blood sugar by following their instructions. Plaintiff did not lose weight as her physicians urged (and they thought she could since they repeatedly recommended that she lose weight), she continued to take in excessive sugar in her diet, and she did not take her medications as prescribed. If Plaintiff controlled her blood sugar level, she would not have headaches. The Commissioner may deny benefits "when a claimant, without good reason, fails to follow a prescribed course of treatment that could restore her ability to work." McCall v. Bowen, 846 F.2d 1317, 1319 (11th Cir. 1988); Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 1988); Lucas v. Sullivan, 918 F.2d 1567, 1571 (11th Cir. 1990).

**Conclusion**

Considering the record as a whole, the findings of the Administrative Law Judge correctly followed the law and were based upon substantial evidence in the record. The decision of the Commissioner to deny Plaintiff's application for benefits should be affirmed.

Accordingly, it is **RECOMMENDED** that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED**.

**IN CHAMBERS** at Tallahassee, Florida, on September 10, 2009.


<u>s/    William C. Sherrill, Jr.</u>
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

Case No. 5:08cv347-SPM/WCS